At the outset, we wanted to welcome all of you to our court and to introduce to you and welcome our visiting judge who's been helping with our work this week, Judge Paul Huck, who has sat with great distinction on the United States District Court for the Southern by President Bush, I think it was. Maybe it was President Clinton. It was just at the very end of the Clinton administration, but in 2000. So he served almost 20 years on that court and still does. And he's sat with our court on many occasions and has sat with a variety of other circuit courts of appeals. So we are particularly delighted, Judge Huck, to welcome you this morning and thank you for your help. It's always a pleasure. Second observation, again, for those of you who may not have appeared before our court before, you'll notice our lighting system. It's really not different from most of the other appellate courts. There's a clock that'll tell you how much time you've used, and there's a green, amber, and red light. Green means, of course, you may proceed. The amber or yellow light is a two-minute warning. The red light is an indication that your time is up, and we'd be much appreciative if you could bring your remarks to a conclusion when that red light goes on. As I've said, you need not stop dead in the middle of a sentence and not finish it, of course, but if you could bring it to a conclusion, we'd be much appreciative. And as I've said regularly, one of my colleagues many years ago said to me and explained every time he appeared in court and presided, he said, that red light is an aspirational, Marcus. Don't forget. So I pass it on. Third and last observation, as you proceed with your argument, you may safely assume we've had a chance to review the briefs, the record excerpts, and in many of the instances we've had a chance to review the record as well. So as you shape your arguments, feel free to go right to the heart of your argument. With that, we'll proceed with the first case, the United States v. Boyd. Good morning. May it please the Court. Good morning. An ambiguous term of an appeal waiver must be construed in favor of the defendant for his waiver to be knowing and voluntary. That simple rule should resolve the government's motion to dismiss today. The parties negotiated an appeal waiver containing an exception that applies, quote, in the event that the district court imposes a sentence that exceeds the Who determines the objectively correct advisory guideline range? I think that's the issue in an appeal waiver. If the issue is waived, it would be the district court gets the final word on that. But if it's not, then the defendant can seek to ask this court to evaluate that determination. And so I think it would be But didn't the district court make it clear in its discussions with Mr. Boyd that in fact this would be, the advisory guideline range would be calculated by the district court? The court said, I will calculate the advisory guideline range. Didn't the court make this abundantly clear that that's who was going to be calculating the advisory guideline range? Yes, I think the court made it abundantly clear that that was the court's sentencing discretion. In other words, that it didn't, and he also said, I can sentence you in excess of that range. But I don't think the court was purporting to discuss the scope of the appeal waiver in that exception. When the court was explaining its sentencing discretion, that was three transcript pages prior. And the court was trying to explain in plain English for the defendant how the sentencing proceeding worked. I think it's perfectly consistent for the court to do that and then for later there to be an appeal waiver that reserves the right to dispute a guidelines range when the sentence exceeds what the defendant argues is the correct guideline range. So you say what the government bargained for was an agreement that if you thought the judge's calculus of the guideline range was wrong, then you could appeal. The whip hand basically, the bargain itself was the government said, yeah, you can make your own independent determination regardless of what the trial judge says about the sentencing guideline calculus. If you think that calculation is wrong, then you're free to appeal the calculation itself. I agree with two limiting factors. One is that it still has to impact the sentence. In one case where this court granted a government motion to dismiss, even under the defendant's calculation, his sentence was within the guideline range. And second, of course, the parties can't stipulate to permit a defendant to pursue a frivolous appeal. So it would have to be a good faith. By your theory, it has to. Where is the good faith written into it? Your theory is that they didn't understand that it was the guideline determination as determined by the sentencing judge. Your theory is we should read the agreement as the guideline range. We can disagree with that so long as our disagreement is a good theoretically plausible or reasonable. If the dispute falls within the goalposts, if you will, we were free to challenge the very thing they thought they were bargaining for. And yes, my theory. I mean, your theory has to be that. I mean, and maybe they could have made the agreement even crystal clear to say as determined by the trial judge. And my suspicion is you will find from this case on that every one of their agreements will say that. But that doesn't answer this question. And we're already moving towards that as I see this problematic language less and less often. But I think that there were two objectively reasonable interpretations of that phrase, which is what makes it ambiguous and triggers the rule that we should construe an ambiguous waiver in favor of preserving a right rather than waiving. So the only thing they bargained away was your right to appeal the calculus if your argument was frivolous. Well, I think they bargained away. That's what you think they bargained away. I think that rule doesn't, I think that that rule doesn't even come from the plea agreement. I think a defendant can't raise a frivolous argument anyways. Right, but that's your argument. Your argument is if our position on the guidelines is at all reasonable or plausible and the district judge disagreed, then we were free to appeal a guideline sentence as calculated by the district court. If it impacts his ultimate sentence. Sure. I mean, obviously we wouldn't be having the debate if it didn't. Right. That is the way we have understood that language. And I know, I don't think, don't know that it happened in this case, but I know that there are occasions where a defense attorney specifically used that language in order to preserve a right to dispute a guidelines determination. Of course, the government also bargained to... Are you referring to the Hamilton case? No, I wasn't referring to a published case, just cases within our office where I believe that those negotiations specifically happened in order to preserve that issue for appeal. I think that the government's interpretation is a little bit more specialized because it doesn't say that everything normally works. And as I said, I think that context is inappropriate where exactly what the question is, is under what circumstances the district court's word is the last word. But aren't you asking us to read that into the language too? Because it seems to me, and I keep getting back to the language itself, that it, I agree, it doesn't say as calculated by the district court, but you would agree that the district court calculates the guideline range. Yes, Your Honor. And then if there was an appeal, if we didn't have an appeal waiver situation, then the court of appeals could look at that again and determine it. But there's nothing, even though there's an appeals process, assuming we don't have an appeals waiver, there's nothing that, again, cuts back on the fact that the district court calculates the guideline range. Correct. So, with that, I don't understand how the language works for you. It is necessarily calculated by the district court. I think that a defendant could reasonably understand it to mean, outside of the context of the way sentencing procedure works, we're talking about an objectively correct guideline range that perhaps the district court got wrong. I think that would be the plain meaning of the phrase, the advisory guideline range. The government's interpretation is that it's all appeals except for upward departures or upward variances, and of course that language would have made that unequivocal, but that isn't the language that the parties bargained for in this case. Let me ask you a question about this. When we look at the meaning of the words, we're looking at a contract, an agreement between two parties and trying to discern its meaning. Are we free to also look at the colloquy between the judge and the parties? In one sense, that's extrinsic. If it was pure contract interpretation, we'd call that parole evidence. Can we look at that? I think we have cases that say we can, but I just wanted to get your sense on that because there's a long dialogue between the lawyer and the defendant and the judge and the prosecutor. Correct. There's stuff that they say to each other that arguably gives some meaning and context to the words we're interpreting in the statute. Are we free to look at that? My sense is that that's a different issue as to whether the Bouchard colloquy is adequate to let the defendant know the full significance. We look at that to see whether the plea was entered knowingly and voluntarily. We look at that to determine whether the judge clearly told the defendant, look, you're given this op. You've got a right to appeal, period. It's unvarnished. But if you enter into this agreement, save for these exceptions, you have abandoned, given up, waived your right to an appeal. So we require the court, for good reason, to really make sure the defendant understands what he's giving up. I'm just asking whether we can also look at the comment that I'm talking about in particular, appeared at 9 and 10 of the colloquy. The judge says, and I quote, I want to make sure you understand that those guidelines are advisory and not mandatory on me as the sentencing judge. And then he says, and this is really the critical language that I wanted you to help me with, he says, in other words, I will calculate the advisory guideline range and I will consider that range using it as a guide, along with other factors in deciding what your ultimate sentence will be, but I'm not required by the law necessarily to sentence you within the range. That means that your sentence could be outside the range. But he explains, the judge explains that the judge bears the burden and intends to exercise its responsibility to calculate the advisory guideline range. Again, I believe that that is limited to a comment on, this is my sentencing discretion, this is how sentencing works. I don't think that that necessarily informs what the parties intended by the appeal waiver exception. I was asking really, I guess, two questions. One, is this something we should, we can consider? I think your answer is yes. But two, even if we consider it, it doesn't answer the story, the issue. Correct. That's basically your position on both levels. Yes, Your Honor. Okay. Thanks very much. Thank you. May it please the Court. Good morning. At bottom, Mr. Boyd can't have it both ways. He can't enter a binding plea agreement that he concedes is knowing and voluntary in every respect except for the sentence appeal waiver. And he can't also bring concessions from the have to relitigate that sentence a second time on appeal. He had one bite at the apple. That bite at the apple was at sentencing where he was free to raise any sentencing objections he wished. And then the district court, as the district court clearly explained to Mr. Boyd during the plea colloquy, would determine the appropriate guideline range and impose a sentence. And pursuant to the plain language of the parties plea agreement, Mr. Boyd had forever waived any right to an appeal in any court unless the district court's ultimate sentence exceeded that guideline range. Of course, you could have solved the whole problem by simply adding three words, as determined by the judge or the sentencing judge. If you had done that, we wouldn't have this problem. The current appeal waiver language from our office, Judge Marcus, does have that language. Right. But the issue you have is you didn't do it here. And the question is whether that created some fair ambiguity about its meaning. That is exactly right. And I think it doesn't create any ambiguity for three reasons. I think, one, the interpretation that's proposed by Mr. Boyd, which is Mr. Boyd and not the trial court, is the ultimate arbiter of what the advisory guideline range is, twists the ordinary and natural meaning of the words in the plea agreement. And I don't just mean in terms of the appeal waiver itself. I mean the corresponding appeal provision in the plea agreement that makes clear that it is the district court, and I believe this was brought up during opposing counsel's time, that the district court is the one who determines what the advisory guideline range is. And that at a time that a defendant pleads guilty, he doesn't know what his sentence will ultimately be. Nevertheless, he can make a knowing and voluntary waiver of his right to appeal. So without knowing what his ultimate guideline range will be, this court has said, since Buschert and in its progeny, that that can nevertheless be waived by a defendant. And that's exactly what happened here. He does not know what the sentence is going to be or what the guidelines are, but he knows what the guidelines are. He knows, the sentencing guidelines have been explained to him. But he knows the rules of the game of sentencing. That is exactly correct. Yes, Your Honor. He knows the rules of sentencing. And as set forth in the plea colloquy, the district court here took care to make sure that he understood what the sentencing guidelines were, that his counsel, his attorney, had discussed that with him, and that he understood how the sentencing guidelines could play out in his case, meaning his sentence could be more severe or less severe, and that nevertheless, he shouldn't plead guilty based on any estimate he had received. On Judge Marks' question, can this court consider the plea colloquy? Yes. And I think this court should, in accordance with Buschert. In order, because as Buschert makes... Why? Why can't he? Well, Buschert makes clear that we cannot find that a waiver was made knowing involuntary, looking at the plea agreement alone. So from that, it would be the United States' position that you must look at the totality of the circumstances, for lack of a better phrase, which would be both the plain language of the plea agreement, and then you must also look at the discussion that took place during the plea colloquy. Of course, if you were applying just normal principles of contract law, you would only look to extrinsic evidence if you came away with the sense that the text was sufficiently unclear, that it didn't provide a clear answer to the problem. So we would look to the colloquy if there was an ambiguity. That's really his argument. The very looking to extrinsic evidence tells you there's a problem. And the problem is we don't really know with certainty. It's more likely than not, maybe, that you... It just doesn't make sense that you would have bargained away your interests here on the bill, has the whip hand to challenge, and only if his argument about the calculus was frivolous would he have... That's the only consideration he was giving you. It doesn't make any sense. But we're looking for maybe more clarity than that. Well, I think even looking at the plea agreement in isolation, were this court to do that and not resort to parole evidence, as it were? It's clear two things. One, that Mr. Boyd has forever waived his right to appeal his sentence, which, again, is a statutory right. He's not waiving a constitutional right. And the statute that permits a defendant to appeal, generally speaking, is to appeal erroneous guidelines calculations. However, the whole premise of how a sentencing process works and how a plea process works is that a district court, in most instances, gets it exactly right. And the person who is the ultimate arbiter of the guideline range, and that's what the plea agreement also makes clear here, is the district court. So I think, really, the crux of the issue comes down to does the plea agreement, even viewed in isolation, indicate that the ultimate decider of whether an appeal is frivolous or whether an issue is meritorious or whether the guideline range is correct is a defendant, as opposed to the district court? And the answer to that is obviously no. That is not a fair reading of the plea agreement. That's a strained interpretation that's not supported by the plain language, or common sense, for that matter. Under that interpretation, the appeal waiver becomes effectively meaningless, because it's an cognizable guidelines issue, and then say, well, it's in. What was the consideration you got for entering into the bargain? What did he give you? By pleading guilty, he saved the government two things. The right to the time and resources that would be necessary to take the case to trial, and secondarily, he saved the government the time and resources necessary to prosecute this appeal. Now, what's interesting about this case, and it's sort of illustrated by United States v. Norman, which is a case that the government cited yesterday in a supplemental authority filing, is sort of what happens when this goes askew. So in United States v. Norman, it's a similar case. It's the same appeal waiver language. It arrives out of our same district, and what happened there is, again, the defendant raised sentencing issues on appeal that the government believes were barred by the exact same appeal waiver language. So we moved to dismiss. The defendant filed a response to our motion to dismiss. We then replied. This court carried that motion with the case, so then we had briefing on the merits in addition to briefing on the motion to dismiss, and ultimately what happened is the motion to dismiss was granted a year and a half later. So all of the time and energy that we think we're bargaining to save were not actually being saved here by individuals like Mr. Boyd, who are deciding that they are the ultimate arbiter of whether or not they have a meritorious appeal. So not only does it waste the government's time and resources, it also wastes this court's time and resources for something that was knowingly and voluntarily waived by the defendant. And the defendant had an opportunity before the district court determined the guidelines range to object to the PSI and to make the arguments necessary before the district court set the guidelines range. So the defendant had the opportunity there and sort of acknowledges that at that point the district court is going to make that decision. Isn't that correct? Yes, Your Honor. They get one bite at the apple when they waive the right to appeal. I would also hasten to add that had the defendant wanted to bring this issue up on appeal, had he wanted to relitigate his sentence on appeal, he could have fled without a plea agreement, which wouldn't contain a sentence appeal waiver. In addition, he could have sought, although this is probably more complicated, he could have sought to proceed to trial if that's what he wished to do. But the problem here is you've got a defendant, and Mr. Boyd is not unique in this sense, seeking to have it both ways. Seeking to have all the benefits that come along with pleading guilty. You know, the three points for acceptance of responsibility, the dismissal of other charges that have been indicted, and then at the same time saying that, but I'm not bound by any of the benefits that the government thinks that they have bargained for. Rather, I get to be the party that decides, not the district court, whether or not I can keep litigating my appeal. And that simply, not only does that not comport with the plain language of the plea agreement, but even assuming that that interpretation, that we are in the land of whether there was arguable ambiguity, it just doesn't make any practical sense. And for those reasons, unless the court has further questions. I have a question for you, sort of a hypothetical question. Sure. I assume, arcuendo, this court would say that the agreement is sufficiently ambiguous. Sent it back. On round two, if it went back to the district court, would you be free to abandon any agreement and say, okay, you want to plead, plead, you don't, don't. We're going straight up. It's up to the district court. Would we be free to abandon the plea agreement? Mm-hmm. Yes, we would. However, I would add that it would also open the door to the other charges that were initially brought against the defendant. I understand all of that. That's why I'm asking the question. Would you be free to then say, okay, the court vacated it, sent it back. The agreement was not what we intended. Maybe we had a problem in how we drafted it. We'll go back to square one. No deal. You want to plead, plead. You don't want to plead. Go to trial. And we'll just leave it all up to what a judge and a jury thinks. Would you have the power to do that? Yes. And that, I think, is the inherent risk of sort of the practical consequences of what is being urged here. So, again, in this idea of, you know, however you want to say it, having your cake and eating it too or wanting it both ways, what I think the defendant would tell you, Mr. Boyd would say, what should happen is if there's an arguable ambiguity, don't send it back. Just sever this point. No, I understand. His position is quite clear. He said this ambiguity, we can't be bound, we think the calculus was unreasonable. Go to the third step in the appeal and consider the reasonableness of the calculation. Yes, Your Honor. And I would make one final point, if I may, unless the court has additional questions. Which is, in looking at what happened at the plea colloquy here, we think there are four pertinent things that illustrate exactly the defendant's knowing involuntary agreement to the appeal waiver. And that would be not only the discussion of the only exception to the appeal waiver that is at issue here, i.e. that if I sentence you, this is the district court, within the guideline range, you understand that you will not be able to appeal. The second would be the explanation that the district court is the arbiter of the guideline range. The third would be that the defendant shouldn't plead guilty based on any estimate that he's received from anyone else. And then the fourth would be that he's satisfied with counsel and that he has read and understood the plea agreement in its entirety and discussed it with counsel. So for those four... I have a question. Yes. Your position is that it's an absolute calculation that cannot be challenged in any way. Is that correct? Yes. Would you agree that the defendant has an expectation, a reasonable expectation, that's going to be calculated appropriately and reasonably? That is a reasonable expectation, Your Honor, yes. So it's your position that under no circumstances, whether it's plain error, obvious abuse of discretion, under no circumstances can the defendant raise the issue on appeal? Yes, but with a caveat, Your Honor. We think yes under this language. You are agreeing that if the sentence is within the range that's as determined by the district court at sentencing, you have waived your right to an appeal. But I would point out that that defendant in your hypothetical is not foregoing any potential relief for two reasons. One, I think one avenue of relief that would still be available to that defendant would be to pursue a 2255. And in that instance, the argument would be probably my defense lawyer was ineffective at sentencing because he didn't raise this obvious issue about the district court having gotten it wrong and seeking relief for one sentence in that avenue. Alternatively, and what does happen... It doesn't help the argument that you've got to go through that procedure. It doesn't help, but I guess the... Go ahead. I just want to make that observation. Yes, that's exactly right. Kick the ball down the... Finality is an ever-moving goalpost in criminal litigation, Your Honor. Yes, that's true. And the other avenue, and this does happen on occasion. So for instance, what was that issue here, the sentencing issue that Mr. Boyd seeks to raise on appeal? It's charging party to a crime, and whether or not George's party to a crime statute means that there are no longer any crimes of violence or serious drug offenses under the guidelines. Now, if Mr. Boyd had brought that issue up on appeal and in the interim this court had published a decision saying, you know what? We buy it. Georgia party to a crime means that there are no longer under the guidelines any crimes of violence or serious drug offenses. The government in that instance obviously would not seek to enforce the appeal waiver. Rather, we would be bound by this court's precedent and would confess there, and the defendant would receive the relief that he sought. But by striking the bargain he did, he should be as bound to those terms as we are. Thank you. Thank you. Mr. Dodson, let me ask you just a preliminary question I really should have asked earlier. Rehab is no longer with us. You've abandoned that issue. Yes, Your Honor. Okay. So really the only question we have to decide today is whether or not you are bound to the district court's calculus of the guidelines. If the answer is yes, case over. If the answer is no, then we have to go back and have briefing, further briefing on the substance of the guideline issue. Yes, Your Honor. I just want to make sure I have the posture right. Yes, Your Honor. Thank you. I want to make a few points in response to the government's argument. First of all, of course the defendant is never the ultimate arbiter of what the guidelines are. The question is whether the district court is or the court of appeals is. The defendant doesn't decide that, but the defendant is entitled to negotiate an appeal waiver even if it's a limited one. Even if the exception is very broad, that preserves his right to appeal a broad array of guidelines issues. Not a broad array. Almost every issue, every factor, according to your interpretation, would be subject to appeal. I can think of a few, but, yes, there's a lot of issues. Many that wouldn't be. Role, controversy, mouth loss. If it's a guidelines issue, yes, if it's a guidelines issue. The only thing you gave up is the right to litigate a frivolous claim about the guideline calculation. And the right to raise – Do I have that right? No, Your Honor. We gave up the right to raise substantive reasonableness, the right to challenge whether the district court used the statutory sentencing factors. And, of course, this exists in a broader context where we gave up our rights to go to trial and to cross-examine the witnesses and all of those due process rights. It wasn't a bargain that existed in a vacuum. It was part of a larger plea negotiation. Right. And so the other issue that I wanted to clarify – One moment. I don't think our clock is working. Let me just – The other issue I wanted to clarify is that while I think a plea colloquy could perhaps clarify an ambiguous term, of course, I don't believe that the district court can change the – Well, the district court could change the plea agreement, but I don't believe that's what the district court was reporting to do here. And, in fact, there's a case such as Howe where this court has found the district court encouraged the defendant to appeal an issue, although an appeal waiver applied, and this court said that's dictative. The district court can't rescind that appeal waiver. So there's a limit to where – Right. So we all agree the district court in the colloquy cannot change the basic terms. Right. But in the colloquy, the district court might explain fully the meaning of the terms that the parties had agreed to. Yes, Your Honor. And I would argue that the single question about the appeal waiver here didn't do that. It replicated the same vague phrase, the advisory guidelines range. The Buchanan case that one of us cited has – So the fact that the district court – excuse me. The fact that the district court in the colloquy says, I get to decide what the guideline range is doesn't amplify or help in any way here? I don't believe so because I think it's just a very different context when he's describing his sentencing discretion than when he's asking the defendant about the appeal waiver they negotiated. Let's see. The last issue I wanted to raise is that the government brought up the Norman case, and I think there's an obvious distinction there where the argument was that a failure to give a downward variance was the functional equivalent of miscalculating the guidelines range. That didn't even arguably qualify under any of the appeal waiver exceptions where the argument here is not a dispute of a downward variance, but it's a dispute of the ultimate guideline range itself. And so there's an example of another issue that isn't covered by this appeal waiver, a downward variance, or not providing a downward variance. If there aren't any further questions, I'll rest the bills. No? Thank you very much, and thank you both. We'll proceed to the next case, DeMarius Allen v. Ambrogi.